|     |     |
| --- | --- |
|     | UNITED STATES DISTRICT COURT |
|     | SOUTHERN DISTRICT OF CALIFORNIA |

| MATTHEW DRONKERS, on behalf of himself and all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) | Civil No. 12cv1151 JAH (WMc) **ORDER DENYING DEFENDANT'S MOTION TO DISMISS** [Doc. No. 8] |
| --- | --- | --- |
| Plaintiff, | | |
| v. | | |
| KISS MY FACE, LLC, a Delaware Limited Liability Company, et. al., | | |
| Defendants. | | |

## INTRODUCTION

On May 11, 2012, Plaintiff Matthew Dronkers filed a complaint for violation of the False Advertising Laws ("FAL"), California Business and Professions Code section 17500 *et. seq.*, violation of California's Unfair Competition Laws ("UCL"), California Business and Professions Code section 17200 *et. seq.*, and violation of California's Consumer Legal Remedies Act ("CLRA"), California Civil Code section 1750, naming Kiss My Face, LLC and Does 1 through 10 inclusive as defendants. Plaintiff alleges Defendant Kiss My Face manufactures, markets and sells a variety of consumer products including moisturizes, hand cremes, shampoo, shine, lighteners, and toothpaste, and sells one line of products as "obsessively organic." Complaint ¶ 8. Plaintiff further alleges Defendant's products do not qualify as organic and "Defendant's misrepresentations regarding the character and quality of its Products were designed to and did, lead Plaintiff and others similarly situated to believe the products were organic." Id. ¶ 14.

Defendant moves to dismiss the complaint and Plaintiff opposes the motion. After a thorough review of the parties' submissions, and for the reason set forth below, this Court DENIES Defendant's motion to dismiss.

**DISCUSSION**

Defendant moves to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure and argues each of Plaintiff's claims are preempted. Alternatively, Defendant moves to dismiss or suspend the case under the primary jurisdiction doctrine. Defendant also argues the complaint fails to satisfy Federal Rule of Civil Procedure 9(b), and Plaintiff fails to sufficiently allege his claims.

**I. Legal Standard**

Rule 12(b)(6) tests the sufficiency of the complaint. See Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. See Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984); see Neitzke v. Williams, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. Robertson, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," he must plead sufficient facts that, if true, "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). "Determining whether a complaint states a plausible

claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1950.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. See Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. See Ileto v. Glock, Inc., 349 F.3d 1191, 1200 (9th Cir. 2003); Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). When ruling on a motion to dismiss, the Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the Court takes judicial notice. See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). If a court determines that a complaint fails to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts. See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).

**II. Analysis**

**A. Preemption**

Defendant argues express preemption and implied conflict preemption require dismissal of Plaintiff's state law claims because the claims are premised on Defendant selling products represented as organic when they do not comport with the standards of the Organic Food Production Act ("OFPA") and the National Organic Program ("NOP").

**1. Express Preemption**

Defendant maintains Plaintiff alleges Defendant's use of the phrase "obsessively organic" misled consumers to believe the products comply with the OFPA standards. Defendant argues the OFPA expressly preempts Plaintiff's state law claims because Plaintiff seeks to enforce the labeling requirements of the NOP through a private cause of action, which the OFPA prohibits.

Express preemption applies when Congress, through explicit statutory language, states the federal law preempts state law. English v. General Elec. Co., 496 U.S. 72, 79 (1990). Where Congress does provide for express preemption, the presumption against preemption requires courts to read the clause narrowly. Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996).

Defendant argues permitting Plaintiff's claims to proceed would require the Court to usurp the role of the Director authorized by the United States Department of Agriculture ("USDA") to develop additional state organic standards for submission to the USDA, as well as the California Department of Food and Agriculture ("CDFA") who is authorized under the California Organic Products Act ("COPA") and the NOP to investigate complaints relating to organic practices. Defendant contends because Plaintiff's claim seek to indirectly impose the NOP standards, thereby second guessing the USDA and circumventing the agency rule making process, the state law is an "obstacle to the accomplishment of congressional objectives" of the OFPA.

In opposition, Plaintiff argues the OFPA does not expressly preempt state labeling requirements applicable to cosmetic products. Specifically, he argues he is not attempting to directly enforce NOP regulation of the term "organic", Congress has expressed no intention to preempt state law claims relating to false and misleading organic claims on cosmetic products, and the OFPA is only applicable to food.

Plaintiff contends his claims are not an attempt to usurp OFPA jurisdiction over the definition of "organic," rather, his claims are grounded in the fact that Defendant's labeling of its products as "obsessively organic" when it products do not comport with the understanding the reasonable consumer has to the meaning "organic" is false and misleading to the reasonable consumer and, therefore, violates California's False Advertising Laws, Unfair Competition Laws and the CLRA. Plaintiff maintains his definition of "organic" is actually different from the NOP definition. He asserts the reasonable consumer believes "organic" products are derived from agricultural material produced on lands free of synthetic fertilizers and conventional pesticides and, therefore,

with no synthetic ingredients or petrochemical compounds while the NOP authorizes use of some synthetic ingredients in "organic" products.

Plaintiff further argues the OFPA contains no statement regarding congressional intent to preempt state organic labeling requirements for cosmetics and Defendant fails to cite any specific provision. He maintains nothing in the OFPA reflects congressional intent to supplant all state organic standards and labeling regimes with regard to cosmetics.

Plaintiff also argues the OFPA and the NOP apply to food not cosmetics. He maintains Defendant labors to expand the contours of "agricultural products" to include cosmetics which Congress clearly did not intend, as evidenced by the definition of "agricultural products" in the OFPA. Moreover, he contends all of the substantive provisions of OFPA clearly apply only to food.

In reply, Defendant argues OFPA expressly preempts Plaintiff's claims because Plaintiff seeks to impose "organic" standards to the personal care industry for products made from organically produced agricultural ingredients and attempts to impose standards that are above and beyond those required by the OFPA. Defendant contends Plaintiff is seeking to enforce the standards in a manner that is inconsistent with the federal organic regime's express provisions.

The OFPA was enacted

> (1) to establish national standards governing the marketing to certain agricultural products as organically produced products;
> (2) to assure consumers that organically produced products meet a consistent standard; and
> (3) to facilitate interstate commerce in fresh and processed food that is organically produced.

7 U.S.C. § 6501. Pursuant to the mandate of the OFPA, the USDA created the NOP which includes standards for producing and handling organic agricultural products, as well as regulations for use of the term "organic" on labels. See 7 U.S.C. § 6503; 7 C.F.R. §§ 205.201, 205.300. Certifying agents accredited by the USDA implement the program by providing certification to those producers and handlers meeting the requirements of the NOP. See 7 U.S.C. §§ 6503, 6514.

According to the OFPA,

> (A) a person may sell or label an agricultural product as organically produced only if such product is produced and handled in accordance with [the statute]; and
> (B) no person may affix a label to, or provide other market information concerning an agricultural product if such label or information implies, directly or indirectly, that such product is produced and handled using organic methods, except in accordance with [the statute]

7 C.F.R. § 6505. Any person who knowingly mislabels a product as "organic" is subject to a civil penalty. 7 U.S.C. § 6519. There is no private right of action to enforce the OFPA.

As noted by Plaintiff, there is no statement regarding any congressional attempt to preempt state labeling requirements for cosmetics. In fact, the language of the statute suggests the OFPA is limited to food. The purpose of OFPA is to establish national standards for marketing "agricultural products as organically produced products," assure the "organically produced products meet consistent standards," and "facilitate commerce in fresh and processed food that is organically produced." 7 U.S.C. § 6501. "Agricultural product" is defined as

> any agricultural commodity or product, whether raw or processed, including any commodity or product derived from livestock that is marketed in the United States for human or livestock consumption.

7 U.S.C. § 6502. The provisions of the regulation that call for standards and a certification program refer to "agricultural products." See 7 C.F.R. §§ 6503, 6504, 6505, 6506. 6507.

Plaintiff's state law claims seek relief based upon Defendant's allegedly deceptive use of "organic" on the labels of its personal care products. While the complaint cites to the NOP compositional requirements for guidance as to a definition of organic, the claims do not seek to enforce NOP products as to "agricultural products" but, instead seeks relief under California's unfair competition, false advertising laws and the CLRA based upon Defendant's claims it products are "organic" when they are not.

The OFPA's definition of "agricultural products" refer to agricultural commodity or product. . .that is marketed in the United States for human or livestock consumption.

1  The ordinary meaning of "human consumption" includes food but does not include
2  cosmetic products. Only Defendant's inflated definition of agricultural products attempts
3  to clothe cosmetics within the rubric of the OFPA. As such, the Court finds Plaintiff's
4  claims are not expressly preempted by the OFPA.

**2.  Implied Conflict Preemption**

Defendant argues Plaintiff's claims are impliedly preempted by the OFPA because his claims obstruct OFPA's purposes and objectives.

"Conflict preemption occurs when 'it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Gilstrap v. United Air Lines, Inc., 709 F.3d 995, 1008 (9th Cir. 2013) (quoting English v. Gen. Elec. Co., 496 U.S. 72, 79 (1990)).

Defendant argues if Plaintiff's claims are permitted, the labeling of Defendant's products as organic, valid under federal law, would nevertheless be subject to challenge under the statutes and common laws of all fifty states. Defendant further argues it is inappropriate for this Court to adjudicate Plaintiff's claims and impose a potentially conflicting set of standards in light of the National Organic Standards Board's ("NOSB") recommendation that the USDA's enforcement of NOP standards govern personal care products and the NOP review of the recommendation.

In opposition, Plaintiff argues the federal government has yet to create laws or regulations regarding the labeling of cosmetics as "organic." He maintains it is readily apparent from the language and history of the OFPA that, at the time it was enacted, Congress limited its application to regulation of organic food, and Congress has not amended the OFPA to include cosmetics. Plaintiff argues agency actions which have not been vetted through formal notice and comment procedure or through a formal adjudicative process lack the force of law sufficient to preempt state law. Plaintiff further argues the NOSB recommendation is silent as to preemption and indicates no preemptive intent.

In reply, Defendant argues the NOP has stated that personal care products may use any of the organic labeling claims authorized by the federal organic rules so long as they meet NOP requirements.

In his complaint, Plaintiff asserts Defendant improperly labeled its personal care products as organic under California law. The OFPA regulates the labeling of "agricultural products", and as noted above, the definition of "agricultural product" in the OFPA refers to products marketed for human consumption. Additionally, the USDA specifically excluded cosmetic products from the NOP. See 65 Fed.Reg. at 80557.

However, Defendant demonstrates that the USDA has changed its position as to the application of the NOP to cosmetic and personal care products as evidence by its April 2008 policy statement which permits cosmetic, body care products and personal care products that contain or made up of agricultural ingredients to be certified under the NOP regulations. See Def's Request for Judicial Notice ("RJN"), Exh. A.[1] Additionally, the NOSB issued a August 30, 2009 recommendation that organic personal care products be recognized by the NOP "to facilitate the development of a single national standard" and issued a formal recommendation that personal care products be recognized by the NOP dated December 10, 2009. See Def's Exhs. B, C.

In spite of the USDA's position that the producers of cosmetic and personal care products may seek certification pursuant to the NOP, the agency has taken no formal steps to include cosmetics, body care products and personal care products with the definition of "agricultural product" subject to the NOP, beyond recommendations. The Court is persuaded by the Third Circuit's reasoning in Fellner v. Tri-Union Seafood, LLC, 539 F.3d 237 (3rd Cir. 2008), in declining to afford less formal agency measures "lacking

---

[1] Defendant seeks judicial notice of various documents, including the April 2008 NOP policy statement "Cosmetics, Body Care Products, and Personal Care Products," the August 30, 2009 NOSB recommendation, and the December 10, 2009 NOSB formal recommendation, A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known with the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201. As matters of public record, the facts contained in the documents may properly be judicially noticed. See MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

the 'fairness and deliberation' which would suggest that Congress intended the agency's action to be binding and exclusive application of federal law" preemptive effect. The policy statement and recommendations are informal agency actions lacking a rulemaking or adjudicatory process. As such, this Court declines to afford the recommendations or policy statements preemptive effect.

Therefore, Plaintiff's claims involving personal care products are not impliedly preempted by federal law.

**B.  Primary Jurisdiction Doctrine**

If the Court determines Plaintiff's claim are not preempted, Defendant argues the Court should dismiss or suspend the action under the doctrine of primary jurisdiction.

Under the primary jurisdiction doctrine courts may, in their discretion, stay proceedings or dismiss a complaint without prejudice "pending the resolution of an issue within the special competence of an administrative agency." Clark v. Time Warner Cable, 523 F.3d 1110, 1114 (9th Cir. 2008). The doctrine applies in a limited set of circumstances." Id. The doctrine is used "if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." Id. Courts generally consider the following factors in determining whether to apply the primary jurisdiction doctrine: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration. Syntek Semiconductor Co., Ltd. v. Microchip Technology, Inc., 307 F.3d 775, 781 (9th Cir. 2002).

Defendant argues the USDA has jurisdiction over personal care products and, while it has declined to exercise its authority, it has asserted jurisdiction over such products in other ways, such as allowing producers and handlers of such products to seek USDA certification under the NOP. Defendant further argues Plaintiff's failure to exhaust required administrative remedies compels application of the primary jurisdiction doctrine

because failure to present issues to the USDA frustrates the purpose of the OFPA to create consistent, national standards. Defendant maintains the OFPA has an administrative review procedure that grants district courts jurisdiction to review final agency decisions. See 7 U.S.C. § 6520. Defendant argues the Court should abstain from exercising authority over Plaintiff's claims in the interests of regulatory uniformity and reliance on the expert agency entrusted by Congress to address the issues in the case.

Plaintiff argues the Court should not, in its discretion, invoke the primary jurisdiction doctrine. He maintains his claims arise strictly under state law and present straightforward issues that are within the common competence of the judiciary. Contrary to Defendant's contention, Plaintiff argues, there are no administrative procedures available to Plaintiff to exhaust.[2] Plaintiff contends that even if the Court finds the primary jurisdiction applicable, it should abstain from invoking it because Plaintiff and the putative class will not be afforded any remedy for the harm they incurred should the NOP eventually promulgate regulations governing organic cosmetics.

In reply, Defendant argues what constitutes an "organic" product is heavily regulated and what constitutes an "organic" personal care product is currently an issue being considered by the NOSB and the USDA.

As demonstrated by Defendant's judicially noticed documents, the issue of "organic" cosmetics is not one of first impression as the USDA has issued policy statements addressing the NOP certification standards applicability to personal care products. Additionally, Plaintiff's claims of improper labeling of Defendant's products as "organic" is not particularly complex requiring the USDA's expertise to resolve. Whether consumers are likely to be deceived by Defendant's representations that its products are organic is not a technical issue and is addressed by courts often. See Reid v. Johnson & Johnson, 2012 WL 4108114, *11 (S.D.Cal. 2012).

While the agency's consideration of and involvement in rulemaking procedures to

---

[2] Because the NOP and the OFPA do not currently apply to cosmetics, body care products or personal care products, Plaintiff is not required to exhaust the administrative remedies contained therein.

address personal care products may support application of the primary jurisdiction doctrine[3], there is nothing indicating the NOSB or the USDA is currently involved in such. The information provided by Defendant demonstrates the agency was considering whether the NOP applies to personal care products in 2010. Defendant does not proffer that consideration of the recommendation is in an active stage and that a decision upon the recommendation is imminent or currently before the agency for resolution.

Accordingly, the Court finds the primary jurisdiction doctrine is inapplicable.

**C. Rule 9(b) Heightened Pleading Standard**

Defendant argues Plaintiff's claims are grounded in fraud and must, therefore, satisfy the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure.

Rule 9(b) states, in relevant part, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Thus, Rule 9(b) requires that parties averments must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Vess v. Ciba-Geigy Corp., U.S.A., 317 F.3d 1097, 1106 (9th Cir. 2003). Under Ninth Circuit case law, Rule 9(b) imposes two distinct requirements on complaints alleging fraud. First, the basic notice requirements of Rule 9(b) require complaints pleading fraud to "state precisely the time, place, and nature of the misleading statements, misrepresentations, or specific acts of fraud." Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994); Vess, 317 F.3d at 1106 (A plaintiff must set forth "the who, what, when, where and how" of the alleged misconduct."). Second, the Rule requires that the complaint "set forth an explanation as to why the statement or omission complained of was false and misleading." Yourish v. California Amplifier, 191 F.3d 983, 993 (9th Cir. 1999).

---

[3]The primary jurisdiction doctrine is also applicable when "'protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme.'" United States v. General Dynamics Corp., 828 F.2d 1356, 1362 (9th Cir. 1987) (quoting United States v. Philadelphia Nat'l Bank, 374 U.S. 321, 353 (1963).

Plaintiff argues his claims are not subject to Rule 9(b) because they are not grounded in fraud. He further argues that, in the event the Court finds Rule 9(b) applicable, his allegations satisfy the heightened pleading standard.

### 1. Whether Rule 9(b) is Applicable

Plaintiff argues his claims are based upon a material misrepresentation by Defendant that is likely to mislead reasonable consumers, not that Defendant acted fraudulently. Additionally, he argues the "fraudulent" prong of the UCL is not subject to the heightened pleading requirements.

Plaintiff's claims under the UCL, FAL and CLRA are based upon Defendant's conduct in falsely marketing their consumer products as "organic" through false and misleading labeling to unfairly capture sales and charge consumers a premium based upon the false perception. Complaint ¶¶ 9, 10. The Court finds Plaintiff's claims alleging misrepresentations, and misleading and deceptive labeling are grounded in fraud. Accordingly, the allegations must meet the heightened pleading standard of Rule 9(b).

### 2. Whether Plaintiff's Allegations Meet the Heightened Pleading Standard

Defendant argues the complaint fails to allege any facts showing Plaintiff's reliance and fails to allege any particularized facts to establish materiality. Defendant further alleges Plaintiff's failure to allege actual reliance requires the claims be dismissed for lack of standing. Additionally, Defendant argues the complaint fails to allege a UCL or FAL claim based upon the "fraudulent" prong, and fails to allege a UCL claim under the "unfair" or "unlawful" prongs.

### a. Reliance and Materiality

Defendant argues Plaintiff fails to specifically allege which Kiss My Face products he purchased were labeled organic or why it was reasonable for him to rely on the "obsessively organic" phrase, what store he purchased the product from or what other statement or claims were contained on the label. He further maintains Plaintiff fails to allege the he reviewed the product label or any other statement on the product or where on the product the statement was located. Defendant also argues the complaint fails to

allege which representations he was exposed to or which ones he found material.

Plaintiff argues he pleads that he purchased Defendant's products in early 2012 in reliance on Defendant's representations on the products' labels that they are "obsessively organic." He further argues he sufficiently pleads reliance when he alleges "but for those representations, Plaintiff would not have purchased or paid as much for such products." Motion at 10; Complaint at 1. Plaintiff maintains he identifies that the "obsessively organic" statement was clearly on the front of the label. He further maintains the although he is not required to, he sufficiently alleges facts to establish his reliance on Defendant's misrepresentations was reasonable. Plaintiff also argues since there is only one representation at issue, he sufficiently pleads that the material representation relied on was that Defendant's products are "obsessively organic."

In his complaint, Plaintiff alleges he "relied on Defendant's representations that Kiss My Face personal care products he purchased were organic. . .and but for those representations, Plaintiff would not have purchased or paid for such products." Complaint ¶ 1. He further alleges Defendant manufactures, markets and sells consumer products including a line labeled "obsessively organic" on the front of the product packaging though they are not organic. Id. ¶¶ 8, 9. Plaintiff also alleges Defendant exploits the natural personal care products by false and misleading labeling of its products. Id. ¶ 10. He further alleges he, and members of the class relied on Defendant's misrepresentations and would not have paid as much for the products but for Defendant's misrepresentations. Id. ¶ 14.

The Court finds Plaintiff sufficiently alleges Defendant made a material misrepresentation that its products were "obsessively organic," on the front of labels on its personal care products in early 2012, and he reasonably relied upon that representation and purchased Defendant's products.

**b. UCL and FAL Claims**

Defendant argues the complaint fails to allege "fraudulent" conduct because it fails to specifically allege any false statement and alleges the existence of a single phrase located

on the front of some undisclosed product, but fails to allege particularized facts establishing a duty to disclose. Plaintiff argues he sufficiently identified that the "obsessively organic" representation is misleading to the reasonable consumer because Defendant's products do not qualify as organic.

The Court finds Plaintiff sufficiently alleges a false statement. Further, Plaintiff's claims do not rely on Defendant's failure to disclose, and therefore, he is not required to allege a duty to disclose. See Berryman v. Merit Property Management, Inc., 152 Cal.App.4th 1544, 1557 (2007).

Defendant further argues the claim based on the "unfair" prong fails because it is not tethered to any applicable legislatively declared policy. Defendant further argues that even if the Court follows the old test of balancing the utility of the conduct with the gravity of the alleged harm rather than the "tether" test, the claim fails because Plaintiff merely relies on conclusory allegations and does not allege how the utility of Defendant's conduct is outweighed by the purported harm.

Plaintiff argues the new "tether" test discussed by Defendant is limited to an action by a competitor alleging anti-competitive practices, not actions alleging other violations such as unlawful business practices or misleading advertising. He further argues he satisfies the relevant balancing test because he pleads that but for Defendant's misrepresentations he would not have purchased or paid as much for such products and, therefore, Defendant's practices caused Plaintiff and the class substantial injury which is not outweighed by countervailing benefits to consumers or to competition.

California courts use three different approaches to determine whether a business practice is unfair. See Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, (9th Cir. 2007). The Ninth Circuit has upheld a district court's use of the balancing test set forth in South Bay Chevrolet v. General Motors Acceptance Corp., 72 Cal.App.4th 861 (1999). See Lozano, 504 F.3d at 736. Applying the South Bay test, this Court finds Plaintiff sufficiently alleges that the utility of Defendant's labeling is outweighed by the harm Plaintiff and the class suffered.

Defendant also argues the claim based upon the "unlawful" prong fails because Plaintiff identifies no underlying legal violation. Plaintiff argues both the FAL and the CLRA prohibit the type of false and misleading conduct alleged and adequately form the basis of Plaintiff's "unlawful" prong claim. Defendant contends Plaintiff's argument is circular and fails to identify any viable statutory violation underlying Plaintiff's claims.

To state a claim under the "unlawful" prong of the UCL, Plaintiff must allege Defendant violated an underlying law. <u>Ingels. v. Westwood One Broadcasting Servs., Inc.</u>, 129 Cal.App.4th 1050, 1060 (2005). Plaintiff identifies violations of the FAL and the CLRA as the basis for his unlawful claims. There is no authority suggesting Plaintiff's reliance on the FAL or the CLRA is improper. Because the Court finds the FAL and the CLRA claims survive Defendant's motion to dismiss, Plaintiff sufficiently alleges a claim under the "unlawful" prong of the UCL based upon violations of those statutes

**c. CLRA Claim**

Defendant contends the claim under the CLRA relies on the same theories asserted by Plaintiff in support of the UCL and the FAL claims. Defendant argues the CLRA claim fails as the FAL and the UCL claims should. Plaintiff maintains Defendant's argument is derivative of its other arguments and should be rejected by the Court.

As discussed above, the Court rejects Defendant's argument as to Plaintiff's UCL and FAL claims. Accordingly, Defendant's motion to dismiss the CLRA claim based on the same argument is DENIED.

**CONCLUSION AND ORDER**

Based on the foregoing, IT IS HEREBY ORDERED Defendant's motion to dismiss is **DENIED**.

DATED: September 26, 2013

JOHN A. HOUSTON
United States District Judge